IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTON HORBENKO

    Petitioner,

v.      No. 2:25-cv-0764 WJ/DLM

DORA CASTRO, WARDEN, *et al.*,

    Respondents.

*Consolidated with*

OLESKII VERMENYCH,

    Petitioner,

v.      No. 2:25-cv-0767 WJ/DLM

DORA CASTRO, WARDEN, *et al.*,

    Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on the consolidated habeas petitions of Anton Horbenko and Oleskii Vermenych, each filed pursuant to 28 U.S.C. § 2241 and challenging the legality of their continued immigration detention. (*See* 2:25-cv-0764, Doc. 10; 2:25-cv-0767, Doc. 8.) After consolidation, Petitioners filed additional motions seeking a stay of removal, voluntary departure, and release from Immigration and Customs Enforcement (ICE) custody. (*See* 2:25-cv-0764, Docs. 20–21; 32–33; 35.) Having reviewed the record, the parties' submissions, and the governing law, the undersigned recommends as follows: (1) Petitioner Horbenko's habeas

---

[1] On September 15, 2025, Senior United States District Judge William P. Johnson entered an Order of Reference referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (2:25-cv-0764, Doc. 7.)

petition should be **GRANTED**, and he should be released under appropriate conditions of supervision; (2) Petitioner Vermenych's habeas petition should be **DENIED**; and (3) Petitioners' remaining motions should be **DENIED AS MOOT**.

**I.      Background**

Petitioners Horbenko and Vermenych are citizens and nationals of Ukraine who entered the United States under the Uniting for Ukraine (U4U) humanitarian parole program. (2:25-cv-0764, Docs. 4 at 1; 20 at 3; 2:25-cv-0767, Doc. 4 at 1.) On February 23, 2024, Petitioner Horbenko applied for admission into the United States at the Fort Worth airport in Dallas, Texas and was granted Ukrainian I-94 Humanitarian Parole. (2:25-cv-0764, Doc. 14 at 2 (citing Doc. 14-1 ¶ 4).) Petitioner Vermenych applied for admission into the United States on May 22, 2024 at the Los Angeles International Airport in Los Angeles, California, and was granted Ukrainian I-94 Humanitarian Parole. (2:25-cv-0767, Doc. 14 at 2 (citing Doc. 14-1 ¶ 4).)

On January 24, 2025, both men, who were traveling in the same vehicle, were detained by Customs and Border Protection (CBP) near the Bridge of the Americas Port of Entry in El Paso, Texas after CBP determined that they had departed the United States without advance authorization and attempted to reenter without valid entry documents.[2] (2:25-cv-0764, Doc. 14 at 2 (citing Doc. 14-1 ¶¶ 5–6); 2:25-cv-0767, Doc. 14 at 2 (citing Doc. 14-1 ¶¶ 5–6); *see also* 2:25-cv-0764, Doc. 29-1 at 2.) On January 25, 2025, CBP issued each Petitioner a Notice and

---

[2] Both petitioners later submitted pro se "Arguments of Unintentional Violation" letters asserting that their departure from the United States was accidental and occurred only because they mistakenly followed roadway directions near the border at night. (*See* 2:25-cv-0764, Doc. 12; 2:25-cv-0767, Doc. 5.) Neither petitioner, however, disputes that CBP determined they had departed the United States and attempted to reenter without valid entry documents. Under 8 U.S.C. § 1225(a)(1), that determination is sufficient to classify them as applicants for admission regardless of their subjective intent. To the extent petitioners seek to challenge the accuracy of CBP's assessment or the circumstances of their departure, a habeas petition is not the proper vehicle for such relief. *See* 8 U.S.C. § 1252(a)(2)(A)(i), (e)(5) (precluding judicial review of factual or procedural challenges relating to the implementation or operation of an expedited removal order); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 111–12 (2020).

Order of Expedited Removal (Form I-860) pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) and transferred them to the Otero County Processing Center (OCPC) in Chaparral, New Mexico. (2:25-cv-0764, Docs. 14 at 2; 14-1 ¶¶ 7–8; 2:25-cv-0767, Docs. 14 at 2; 14-1 ¶¶ 7–8.)

ICE initiated removal efforts for Horbenko by requesting travel documents from the Ukrainian consulate in April 2025 and received them in May 2025. (2:25-cv-0764, Doc. 14-1 ¶¶ 10–11.) On June 26, 2025, the removal packet for Horbenko was sent to ICE's travel team to arrange removal, but the mission was canceled due to the lack of available commercial flights to Ukraine. (*Id.* ¶ 12.)

Vermenych, on the other hand, asserted a Convention Against Torture (CAT) claim in April 2025,[3] and the Enforcement and Removal Operations (ERO) office submitted his claim to the United States Citizenship and Immigration Services (USCIS). (2:25-cv-0767, Doc. 14-1 ¶¶ 9–10.) That same month, "USCIS rendered a negative CAT finding." (*Id.* ¶ 11.) On June 5, 2025, ICE similarly forwarded Vermenych's removal packet to its travel team, but that mission was also canceled because no commercial flights to Ukraine were available. (*Id.* ¶ 12.)

In September 2025, ICE's Removal and International Operations (RIO) unit advised that Ukraine and Poland were coordinating a land-border transfer process, and ICE scheduled a charter removal flight for both Petitioners for October 31, 2025. (2:25-cv-0764, Doc. 14-1 ¶ 13; 2:25-cv-0767, Doc. 14-1 ¶ 14.) Both Petitioners were referred to USCIS for credible fear screenings ahead of the scheduled October 31, 2025 removal flight, and each received a negative determination. (2:25-cv-0764, Doc. 26 at 2 (citations omitted).) Following those results, Petitioner Horbenko waived Immigration Judge (IJ) review and remained subject to expedited removal, while

---

[3] CAT "prohibits removal to a country where an alien would probably face torture." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1204 (10th Cir. 2008) (citing *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004)).

3

Petitioner Vermenych sought IJ review, obtained a reversal of USCIS's finding, and was placed into full § 240 removal proceedings (*Id.* (citing 2: 25-cv-0764, Doc. 26-A; 8 U.S.C. § 1229a).)

According to Respondents, the late-stage credible-fear referrals and the limited window for adjudication made it operationally impossible to finalize Petitioners' removal arrangements in time for the October 31, 2025 flight, rendering the logistics of that flight "untenable." (*See id.*) ICE attempted a second removal on November 17, 2025, but Petitioner Horbenko was not manifested for the flight due to an "administrative error" at the Florence, Arizona staging facility. (2:25-cv-0764, Docs. 29 at 1–2; 29-1 ¶¶ 16–17.) On December 5, 2025, RIO advised ICE that no future removal missions to Ukraine would be viable in the foreseeable future due to the ongoing armed conflict. (2:25-cv-0764, Docs. 29 at 2; 29-1 ¶ 20.) ICE thereafter began exploring removal to a third country. (2:25-cv-0764, Docs. 29 at 2; 29-1 ¶ 21.)

On August 11, 2025, Petitioners filed separate habeas petitions under 28 U.S.C. § 2241 challenging their continued detention. (2:25-cv-0764, Doc. 1; 2:25-cv-0767, Doc. 1.) On October 7, 2025, the Court consolidated the cases under No. 2:25-cv-0764. (2:25-cv-0764, Doc. 16.) Petitioners subsequently filed a series of motions, including a Motion to Stay Removal and Request for Voluntary Departure (Doc. 20), a Motion for Release from ICE Custody (Doc. 21), and additional filings seeking removal deadlines, third-country removal, or release under supervision. (Docs. 32–33; 35.)

On, January 2, 2026, the Court ordered Respondents to provide updated information regarding removal efforts. (2:25-cv-0764, Doc. 31.) Respondents reported on January 15, 2026, that they have no articulable timeframe for removing Horbenko, who asked to be removed to Mexico, as it remains unclear whether Mexico will agree to accept him. (*See* 2:25-cv-0764, Doc. 34 at 1–2.) Respondents also noted Vermenych remains detained under 8 U.S.C. § 1225(b)(2)

4

because removal is legally precluded absent a final removal order or a formal withdrawal of his application for admission before the Immigration Court. (*Id.* at 2.)

The consolidated petitions and related motions are now fully briefed and ready for disposition.

## II.     Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. 28 U.S.C. § 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

"The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a [detainee] to [challenge] the legality of that custody[] and" to secure release from unlawful detention. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)). Because Petitioners challenge the legality of their continued detention, their claims fall squarely within the scope of § 2241.

At the same time, Congress has imposed significant limits on judicial review of removal orders and related immigration decisions. *See* 8 U.S.C. § 1252(a)(2)(A), (e). District courts may not review the validity of expedited removal orders or stay removal. *See Dehghani v. Castro*, No. 2:25-cv-0052 MIS/DLM, 2025 WL 2717845, at *3 (D.N.M. Sept. 24, 2025) ("It is well settled that district courts lack jurisdiction to review removal orders, hear challenges to removal orders, or stay removal orders.") (quotation and brackets omitted). These jurisdictional constraints do not bar

5

review of Petitioners' detention claims, but they do limit the forms of relief available in this proceeding.

### III. Discussion

The undersigned addresses each Petitioner's detention separately because the statutory basis for their custody differs. Petitioner Horbenko is detained under § 1231(a) following a final order of removal, whereas Petitioner Vermenych is detained under § 1225(b) as an arriving alien in ongoing § 240 proceedings. Each Petitioner's entitlement to relief turns on the statutory scheme governing his detention.

#### A. Horbenko's Continued Detention

Petitioner Horbenko's continued detention is unlawful because the record establishes that his removal is not significantly likely in the reasonably foreseeable future, and the Government has not carried its burden to show otherwise.

In his amended petition, Horbenko asserts that he has not been provided a copy of his removal order and seemingly questions whether one was issued. (*See* 2:25-cv-0764, Doc. 10 ¶ 8.) Yet he also alleges that he is detained under "[8 U.S.C. §] 1231(a)(6), because more than ninety days have elapsed since [his] removal order[] became administratively final." (*Id.* ¶ 33.) Respondents' filings likewise proceed on the understanding that a final expedited removal order exists, and the record and the parties' briefing uniformly treat Horbenko as subject to such an order. (*See* 2:25-cv-0764, Docs. 4 at 2–3; 14; 14-1; 18 at 2; 20; 24; 26 at 6; 29-1 ¶ 7.) Thus, the Court evaluates his detention under the statutory scheme governing final removal orders.

Post-removal detention is generally governed by 8 U.S.C. § 1231(a)(2), which mandates detention "[a]fter entry of a final removal order." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)). Pursuant to the Immigration and Nationality Act (INA), the Government must remove

a noncitizen from the United Stated within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, the noncitizen must be detained. *Id.* § 1231(a)(2). The removal period begins when the removal order "becomes administratively final." *Id.* § 1231(a)(1)(B)(i). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

The Government may detain a noncitizen beyond the initial 90-day removal period only for the time "reasonably necessary" to effectuate removal. *Zadvydas*, 533 U.S. at 699; *see also* 8 U.S.C. § 1231(a)(6). Detention for six months is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once that period passes, a detainee need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to the Government to rebut that showing with evidence. *Id.* This framework applies equally to inadmissible and arriving noncitizens. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005). With this framework in mind, the undersigned turns to whether Horbenko has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future.

Horbenko has been detained for approximately 12 months—double the presumptively reasonable period. He has twice been scheduled for removal to Ukraine, and both attempts failed. Respondents now concede that no future removal missions to Ukraine will be viable in the foreseeable future. (*See* 2:25-cv-0764, Docs. 29 at 2; 29-1 ¶ 20.) Respondents further acknowledge that they have "no articulable time frame" for removal to any third country and are merely awaiting acceptance from Mexico. (*See* 2:25-cv-0764, Doc. 34 at 1–2.) They identify no country that has agreed to accept Petitioner, no timeline for a response, and no concrete plan for effectuating removal. Passive, indefinite waiting for a third-country response does not constitute evidence that removal is reasonably foreseeable.

Courts in this district have repeatedly held that detention exceeding six months, combined with failed removal efforts and the absence of any accepting country, constitutes "good reason" to believe removal is not reasonably foreseeable. In *Lorenzo v. Bondi*, a Guatemalan citizen was subject to an IJ's withholding-of-removal order to Guatemala, but Mexico—the only third-country option DHS pursued—had not responded to DHS's request for acceptance, leaving the petitioner detained for more than six months with no viable removal route. *Lorenzo v. Bondi*, No. 2:25-cv-0923 KWR/GJF, 2026 WL 84521, at *5–6 (D.N.M. Jan. 12, 2026). The court emphasized that a months-old request to Mexico—without any indication of progress—was insufficient to show that removal was reasonably foreseeable, noting that the government's assertions that it was pursuing third country removal "failed to rebut [the p]etitioner's showing that there [was] no significant likelihood of removal in the reasonably foreseeable future." *Id.* at *6.

Similarly, in *Jimenez Chacon v. Lyons*, the court found that removal was not reasonably foreseeable where, after eleven months of detention, DHS had contacted multiple countries over many months without success and could not identify any country willing to accept the petitioner. *Jimenez Chacon v. Lyons*, --- F. Supp. 3d ---, No. 2:25-cv-0977 DHU/KBM, 2025 WL 3496702, at *7 (D.N.M. Dec. 4, 2025). The court stressed that "the remote prospect of removal—to a hypothetical third country that may eventually choose to accept him—does not make [the p]etitioner's removal reasonably foreseeable." *Id.* (citing *Zadvydas*, 533 U.S. at 702)

The same conclusion was reached in *Salazar-Martinez v. Lyons*, where the court ordered release after seven months of detention because ICE had submitted repatriation requests to four countries, two had denied the requests, and the remaining two had not responded for over five months. *Salazar-Martinez v. Lyons*, No. 2:25-cv-0961 KG/KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025). The court rejected DHS's argument that removal remained foreseeable

simply because some countries had not yet declined, explaining that "the mere possibility of repatriation to third countries, without concrete progress, is insufficient to justify continued detention." *Id.* (citations omitted)

The parallels from those cases to this case are clear. As in *Lorenzo*, *Jimenez Chacon*, and *Salazar-Martinez*, Respondents here have no accepting country, no timeline, and no evidence of progress toward effectuating removal. Respondents affirmatively acknowledge that removal to Ukraine is not viable and that they cannot identify any country willing to accept Petitioner. (*See* 2:25-cv-0764, Docs. 29 at 2; 29-1 ¶ 20; 34 at 1.) They have contacted only one country, received no response, and now concede that they cannot provide any timeline for removal. Under *Zadvydas*, such speculative and indefinite efforts cannot justify continued detention.

Respondents initially argued that removal remained reasonably foreseeable because they had secured a scheduled October 31, 2025 charter flight to Poland and asserted that a land-border transfer into Ukraine provided a viable removal route. (*See* 2:25-cv-0764, Docs. 14 at 4–5; 26 at 2.) After that removal effort failed, Respondents' position shifted significantly. In their updated status reports, Respondents now acknowledge that removal to Ukraine is not viable, that no third country has agreed to accept Petitioner, and that they lack any articulable timeline for removal. (*See* 2:25-cv-0764, Docs. 29 at 2; 29-1 ¶ 20; 34 at 1.) These concessions confirm that removal is not reasonably foreseeable. As *Salazar-Martinez* makes clear, pending requests without concrete progress are insufficient to justify continued detention. *See Salazar-Martinez*, 2025 WL 3204807, at *2. Generalized assertions that the Government is "working on" removal do not satisfy its burden under *Zadvydas*.

Because Horbenko has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future and Respondents have not rebutted that showing, his

9

continued detention violates the INA. Accordingly, the undersigned recommends that Petitioner Horbenko be released under appropriate conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

### B. Vermenych's Continued Detention

Petitioner Vermenych stands in a materially different posture from Petitioner Horbenko. Unlike Horbenko, who is detained under § 1231(a) following a final order of removal, Vermenych is considered an arriving alien in ongoing § 240 proceedings after receiving a positive credible-fear determination.[4] Respondents note that Vermenych's prior humanitarian parole automatically terminated upon his departure from the United States, and that he was therefore properly treated as an "arriving alien" upon his attempted reentry at the Bridge of the Americas Port of Entry in El Paso, Texas. (*See* 2:25-cv-0767, Doc. 14 at 2–3 (citing 8 C.F.R. § 212.5(e)(1)(i)).) His detention is therefore governed by § 1225(b), not § 1231(a), and the statutory framework applicable to him is fundamentally different.

The record reflects that Vermenych was placed into expedited removal, referred for a credible-fear interview, received a negative determination, and then appealed to an Immigration Judge, who overturned the denial and found credible fear. (*See* 2:25-cv-0767, Docs. 14 at 2–3; 14-1 ¶ 15; 2:25-cv-0764, Docs. 18 at 2–3; 26 at 2–3; 30 at 1.) This sequence of events is what determines which detention statute applies to him.

Under the INA, an arriving alien who expresses a fear of persecution is referred for a credible-fear interview. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii); *Dep't of Homeland Sec. v.*

---

[4] The regulation defines "arriving alien," in relevant part, as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry . . . ." 8 C.F.R. § 1.2; *see also Singh v. Noem*, 2:25-cv-1110 JB/KK, 2026 WL 146005, at *18 (D.N.M. Jan. 20, 2026) (noting that Congress's repeated use of "arriving" signals that § 1225 governs noncitizens who are actively presenting for inspection and seeking lawful entry, not those whose entry was completed long ago).

*Thuraissigiam*, 591 U.S. 103, 109 (2020). If the asylum officer finds credible fear, the noncitizen is placed into a standard removal proceeding and receives "full consideration" of the asylum claim. *Thuraissigiam*, 591 U.S. at 110 (quoting 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii)). Once credible fear is found, the prior expedited-removal order is no longer operative, as the applicant is diverted into standard removal proceedings and does not receive expedited removal. *See id.* at 109–11 (explaining that a credible-fear finding removes the applicant from expedited removal and places him into standard removal proceedings). The Tenth Circuit has likewise recognized that pending protection-related proceedings render a prior removal order non-final. *See Luna-Garcia v. Holder*, 777 F.3d 1182, 1186–87 (10th Cir. 2015) (explaining that a reinstated removal order is not final while reasonable-fear proceedings remain ongoing).

Nor does it matter whether Vermenych affirmatively "requested" a credible-fear interview. The statute requires referral whenever an applicant "indicates" a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i)–(ii). Moreover, Vermenych appealed the negative credible-fear determination, thereby invoking and ratifying the statutory review process that ultimately placed him into § 240 proceedings. Once the IJ found credible fear, Vermenych was no longer subject to expedited removal and no longer had a final removal order.

Detention during the credible fear process is governed by § 1225(b). *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Applicants "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Applicants who are found to have a credible fear "may also be detained pending further consideration of their asylum applications." *Thuraissigiam*, 591 U.S. at 111 (citing § 1225(b)(1)(B)(ii); *Jennings*, 583 U.S. at 285–87). The Supreme Court has held that detention under § 1225(b)(1) and § 1225(b)(2) is mandatory, and courts may not impose a bond hearing or a

11

reasonableness limitation. *See Jennings*, 583 U.S. at 301–03. By contrast, § 1231 governs detention after entry of a final order of removal, and *Zadvydas* addresses detention under that provision once the removal period has begun. *See Zadvydas*, 533 U.S. at 683, 699–701.

Thus, the threshold question is whether Vermenych is detained under § 1225(b) or § 1231(a). Vermenych asserts in his amended petition that he is detained under § 1231 because his "removal order[] became administratively final" and more than ninety days have elapsed. (2:25-cv-0767, Doc. 8 ¶¶ 25–30, 33, 36.) Yet elsewhere he states that he "has not been issued a deportation order" and has not been provided any decision or order. (*Id.* ¶¶ 8, 25.) The record does not support his assertion that a final removal order exists.

Respondents explain—and Vermenych does not dispute—that Vermenych received a negative credible-fear determination from USCIS, requested IJ review, and on October 28, 2025, the IJ overturned USCIS's denial. (*See* Doc. 26 at 2; *see also* 2:25-cv-0767, Docs. 30; 18 at 2–3; 19 at 2–3.) As a result, Vermenych is now in standard removal proceedings where he will receive full consideration of his asylum claim. *See Thuraissigiam*, 591 U.S. at 110. Respondents correctly note that they "can no longer legally remove Petitioner Vermenych under the expedited removal order" unless he withdraws his application for admission. (*See* Doc. 26 at 2 & n.1.)

Because Petitioner is an arriving alien in ongoing standard removal proceedings, he is detained under § 1225(b)(2), which mandates detention "until a final determination of admissibility." *See Jennings*, 583 U.S. at 300–03. Section 1225(b)(2) contains no bond authority, no discretionary release mechanism other than DHS parole, and no statutory time limit. *See id.* at 300–01 (explaining that §§ 1225(b)(1) and (b)(2) "unequivocally mandate" detention and authorize release only through parole). Courts may not tack a reasonableness limitation or bond

requirement onto § 1225(b)(2). *See id.* at 301 & 303 (rejecting any implicit six-month limit on detention).

*Zadvydas* does not apply in Vermenych's case. *Zadvydas* governs only post-order detention under § 1231(a)(6). *Zadvydas*, 533 U.S. at 699–701. Because Petitioner has no final order of removal due to the pending credible fear process, the removal period has not begun, and § 1231(a) does not apply. His detention therefore falls exclusively under § 1225(b), and any reliance by Vermenych on § 1231(a)(6) is misplaced.

Courts in this district have reached the same conclusion when addressing arriving aliens placed into § 240 proceedings after a positive credible-fear finding. In *Mursalin v. Dedos*, the court held that an arriving alien who received a positive credible-fear determination and was placed into § 240 proceedings "remains subject to mandatory detention pursuant to § 1225(b)(1)(B)(ii) until the completion of his claim for asylum[,]" and that neither § 1226 nor § 1231 applies. *Mursalin v. Dedos*, No. 1:25-cv-0681 MIS/JMR, 2025 WL 3140824, at *6 (D.N.M. Nov. 10, 2025) (citing *Jennings*, 583 U.S. at 287, 299). The court further explained that detention under § 1225(b) contains no bond authority and that the only potential avenue for release is DHS parole. *Id.* (citing *Matter of M-S-*, 27 I. & N. Dec. 509, 516–17 (A.G. 2019)).

Other courts in this circuit have likewise rejected attempts by § 1225(b) detainees to invoke *Zadvydas*. In *Esahaqzada v. U.S. Immigration & Customs Enforcement*, the court denied habeas relief to an arriving alien detained under § 1225(b)(1), explaining that the statute "provides for mandatory detention . . . pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed[,]" and "that the *Zadvydas* construction does not apply to detention under Section 1225(b) . . . ." *Esahaqzada v. ICE*, 2025 WL 2933890, at *1–2 (D. Kan. Sept. 5, 2025) (citing 8 U.S.C. § 1225(b)(1)(B); *Jennings*, 583 U.S. at 298–301). The court

13

emphasized that *Jennings* forecloses any argument that § 1225(b) contains an implicit reasonableness limitation or permits judicial release. *See id.* at *2. The same statutory framework governs Vermenych, who—after receiving a positive credible-fear determination—remains subject to mandatory detention under § 1225(b)(2) pending completion of his § 240 proceedings. He is therefore not entitled to habeas relief at this stage.

Should Vermenych later receive a final order of removal, the statutory basis for his detention would shift to § 1231(a), and any challenge to post-order detention would be governed by the framework set forth in *Zadvydas*. Notably, courts addressing post-order detention have generally held that the six-month presumptively reasonable period under *Zadvydas* is measured by the total, cumulative time a noncitizen has been detained, rather than restarting upon a change in detention status. *See Jimenez Chacon*, 2025 WL 3496702, at *6–7 (collecting cases and concluding that "the clock does not 'start over' for purposes of *Zadvydas* if a person is re-detained"). The undersigned expresses no view on how that analysis would apply to Vermenych in any future posture, but notes that such questions would arise only if and when a final order of removal is issued.

Consequently, the undersigned recommends that the Petition for Writ of Habeas Corpus be denied as it pertains to Vermenych.

### IV. Conclusion

For the reasons stated above, the undersigned recommends as follows:

(1) Petitioner Horbenko's Amended Petition for Writ of Habeas Corpus (2:25-cv-0764, Doc. 10) should be **GRANTED**, and he should be released from custody under appropriate conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3), subject to any additional terms and conditions the Court may deem appropriate;

(2) Petitioner Vermenych's Amended Petition for Writ of Habeas Corpus (2:25-cv-0767, Doc. 8) should be **DENIED**; and

(3) Petitioners' remaining motions—namely, the Petition for Review, Motion to Stay Removal, and Request for Voluntary Departure (Doc. 20); the Motion for Release from ICE Custody (Doc. 21); the Motion to Set Deadlines for Removal (Doc. 32); the Motion for Order (Doc. 33); and the Motion to Finalize the Matter (Doc. 35)—should be **DENIED AS MOOT** in light of the recommended disposition of the consolidated habeas petitions.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE